[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Housatonic Bank ("bank"), filed an application seeking to attach certain real property conveyed by its alleged debtor, defendant William E. Eheman, first to his wife, defendant Andrea M. Eheman, and then by him and his wife to his mother, CT Page 6476 defendant Jane S. Eheman. While the hearing on the application was in progress on July 11, 1991, a sale of the property took place. The parties stipulated that the proceeds would be placed in escrow pending adjudication of the application.
The plaintiff alleges that William Eheman fraudulently conveyed property at Benham Road, Ansonia. The bank asserts that when Eheman transferred the Benham Road property to his wife on September 30, 1986, either the transfer was fraudulent or a constructive fraud was created and that he retained an equitable interest in the property. In 1989 Mr. Eheman and his wife both signed a quitclaim deed putting the property in the name of his mother, Jane S. Eheman, and the bank seeks a characterization of that transaction as a fraudulent transfer of William Eheman's equitable interest in the property.
As the Connecticut Supreme Court recently observed, the court's role as to an application for a prejudgment attachment is "to determine the probability of success by evaluating the arguments and evidence presented by both parties, and its ruling is not intended to be a final resolution on the merits." McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 526 (1991). This limited weighing process applies to both factual and legal issues. Id.; Babiarz v. Hartford Special, Inc., 2 Conn. App. 388, 393 (1984).
In weighing the probabilities of success, this court finds that the plaintiff is likely to prove at a full trial the following facts. William Eheman is indebted to it pursuant to a note signed by him and his business partners in 1989, and this note represented a consolidation of several notes on which Eheman and his partners were in default. The first of those notes originated on December 3, 1986. (Ex. A). Earlier in 1986, William Eheman had refinanced the mortgage on the home he owned jointly with his wife on Prospect Street. During the interval between the two transactions, Mr. and Mrs. Eheman bought a house lot on Benham Road taking title in both names, however in October 1986 Mr. Eheman quitclaimed his interest to his wife, and it appears likely that the plaintiff will be able to prove that the transfer was, in fact, without consideration.
Mr. Eheman did not testify concerning his purpose in quitclaiming his interest in the Benham Road lot to his wife, and her only explanation was the vague claim that the transfer was for "estate planning purposes". Mrs. Eheman, an administrator with a national funeral home chain, professed not to know what her husband's occupation was between 1986 and the present, though she was aware that when they refinanced their Prospect Street home in 1986 he used the proceeds for real estate investments in which he was engaged. It appears likely that the bank will be able to prove that the purpose of the 1986 transfer was to remove the Benham Road property from the reach of existing and prospective creditors while CT Page 6477 Mr. Eheman expanded his ventures buying and selling real estate. Further evidence of the sham nature of the 1986 transfer was that Eheman continued to list that property as his own asset in a financial affidavit furnished to the bank in October 1988 (Ex. B), and that he signed two mortgage deeds as to that property on dates after the purported transfer of his interest to his wife (Ex. F, G).
On November 7, 1989, while Mr. Eheman was in the process of consolidating three notes to the plaintiff under a refinancing plan designed to address the default of payment of those notes (Ex. A), William Eheman and Andrea Eheman executed the quitclaim deed to his mother for the Benham Road property. On its face, that deed recites that the conveyance was for no consideration.
Andrea Eheman testified that the sale of the property that took place contemporaneously with the hearing was the sale of her house and that, despite the purported transfer of her interest to her mother-in-law, she expected to take the proceeds to Florida and use them to buy a new residence. Though Andrea Eheman professed uncertainty on this point, the court finds that the plaintiff will be able to establish that the parties' intention was for Mr. Eheman to accompany her to Florida and to continue to use the proceeds of the sale as their jointly held property.
The court is not persuaded by Andrea Eheman's attempts to characterize her husband's inclusion on the mortgage deeds as shortcuts in a loan application process and his inclusion on the deed to his mother as a mistake by their lawyer.
Whether or not the plaintiff is likely to succeed on the theory that the transfer of William Eheman's interest in the Benham Road property to his wife in 1986 created an equitable trust, there is sufficient probability that the bank will establish that this transfer was fraudulent in that it was made with a fraudulent intent in which the grantee participated. Bizzocco v. Chinitz,193 Conn. 304, 312 (1984).
Andrea Eheman testified that the 1989 conveyance of her own interest in the Benham Road property to her mother-in-law was for the purpose of avoiding a claim against her, an admittedly fraudulent conveyance. The court finds it sufficiently probable that William Eheman's transfer at that time was similarly an attempt to avoid creditors and was conduct denominated as fraudulent pursuant to 52-552 C.G.S.
The Appellate Court has ruled in Rocklen, Inc. v. Radulesco,10 Conn. App. 271, 278 (1987) that a conveyance is fraudulent if motivated by a desire to circumvent any debt or duty. The Court in that case further noted that the debt sought to be avoided at the time of transfer need not have been a debt to the creditor who CT Page 6478 seeks to have the conveyance set aside: "[t]here is no requirement that the transferor's intent to defraud be directed against any particular person." id.
The bank established probable cause that William Eheman will be held liable to it in the amount of $135,000, inclusive of interest and collection costs. The court finds that the bank has already attached property of this defendant and other defendants to the extent of $58,000.00. Finding that the transfers by William Eheman of his undivided half interest in the property at Benham Road will probably be found to have been fraudulent to the standard of proof found to be applicable in Tyers v. Coma, 214 Conn. 8. 11 (1990). The court finds probable cause for the attachment of half the proceeds of the sale of that property, up to the amount of $77,000.00
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT